IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JENNIFER HAILES,<br><br>        Plaintiff,<br><br>vs.<br><br>SECRETARY OF DEPARTMENT OF<br>VETERANS AFFAIRS,<br><br>        Defendant. | CASE NO. 1:24-cv-293<br><br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br><br>**MEMORANDUM<br>OPINION AND ORDER** |

Defendant Secretary of the Department of Veterans Affairs moves to exclude two expert reports offered by Plaintiff Jennifer Hailes. Doc. 48. Hailes opposes the Secretary's motion, Doc. 49, and the Secretary filed a reply, Doc. 50. This order adjudicates the parties' dispute.

*Discussion*

Before a witness can present expert testimony, the party proffering the expert's testimony must qualify its "expert with reference to his 'knowledge, skill, experience, training, or education.'" *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 293 (6th Cir. 2007) (quoting Fed. R. Evid. 702). If the proponent crosses that hurdle, the Court must evaluate whether the proffered testimony is relevant and based on a "reliable foundation." *Id.* at 294.

To be admissible, an expert's testimony must be helpful to the trier of fact. Fed. R. Evid. 702(a). And proffered testimony is not helpful if it's not relevant. *Madej v. Maiden*, 951 F.3d 364, 370 (6th Cir. 2020). "[E]xpert

testimony does not help where the jury has no need for an opinion because the jury can easily reach reliable conclusions based on common sense, common experience, the jury's own perceptions, or simple logic." 29 C. Wright & A. Miller, Fed. Prac. & Proc. Evid. § 6265.2 (2d ed. April 2026 Update); *see Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 905 (6th Cir. 2006).

### 1. Tracie Ellis-Reid

Hailes offers a report signed by Tracie Ellis-Reid in April 2025. *See* Doc. 48-1. Ellis-Reid worked for over 30 years in Pathology & Laboratory Medicine Services at the Department of Veterans Affairs, which is the office where Hailes worked and which is the subject of Hailes's suit. For seven years, Ellis-Reid was the supervisor of clinical microbiology. Indeed, the Secretary concedes that until 2020, Ellis-Reid was Hailes's supervisor and the person who prepared her performance evaluations. Based on this experience, Hailes offers Ellis-Reid to testify about Hailes's 2021 annual performance rating. *See* Doc. 48-1, at 1–2; Doc. 49, at 1–2.

Through their dispute, the parties gloss over an important distinction. If a witness is offered as a scientific expert, then the Court must consider the factors set out in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).[1] *See First Tennessee Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 334 (6th

---

[1]     These factors include:

> (1) "whether a theory or technique ... can be 'and has been tested'"; (2) "whether the theory or technique has been subjected to peer review or publication"; (3)

2

Cir. 2001). And in that case, a scientific methodology created for litigation would be viewed with skepticism. *See Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434–35 (6th Cir. 2007). But if the witness proposes to testify as a non-scientific expert, based on her experience or expertise, then the *Daubert* framework "is 'only of limited help.'" *Barreto*, 268 F.3d at 334 (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1349 (6th Cir. 1994)); *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152–53 (1999) (explaining the "broad latitude" given to courts in determining whether any particular *Daubert* factors are relevant in a given case); *see also Wood v. Wal-Mart Stores E., LP*, 576 F. App'x 470, 472 (6th Cir. 2014) (finding that 40 years' relevant experience provided "ample reason … to conclude that [a witness] was a reliable witness whose expertise and testimony would assist the jury"). "[T]he prepared-solely-for-litigation factor," however, can be relevant for either sort of expert. *See Johnson*, 484 F.3d at 435.

A non-scientific expert "may … rely on his experience in making conclusions." *Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005). But a non-scientific expert who is qualified based on his or her experience still "'must explain how that experience leads to the conclusion reached ... and how that experience is reliably applied to the facts.'" *Id.* (quoting Fed. R. Evid. 702

---

"the known or potential rate of error"; and (4) "general acceptance."

*First Tennessee Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 334 (6th Cir. 2001) (quoting *Daubert*, 509 U.S. at 593–94).

advisory committee's note). In other words, a trial court cannot "simply 'tak[e] the expert's word for it.'" *Id*. (quoting Fed. R. Evid. 702 advisory committee's note).

At first blush, one might think it obvious that Ellis-Reid proposes to testify as a scientific expert. She is a Board-certified medical technologist in the discipline of microbiology and she worked in Pathology & Laboratory Medicine Services at the Department of Veterans Affairs. *See* Doc. 48-1, at 3–6. But, as noted, Hailes doesn't propose to rely on Ellis-Reid to explain how microscopes work or how professionals identify material in a specimen. Instead, Ellis-Reid proposes to testify about Hailes's "annual performance rating" for fiscal year 2021. *Id*. at 1; *see id*. at 2 ("Expert witness testimony will include an interpretation of performance grading rubrics and standards provided in the Plaintiff's FY21 overall annual performance rating (Exhibit A), and each individually graded performance rating in Element 1 through 5."). Indeed, Ellis-Reid's report is composed of an element-by-element critique of Hailes 2021 performance review, with an assessment of exhibits used to support the review, and a comparison with a co-worker. *See* Doc. 48-1, at 12–38. And this testimony is apparently based on Ellis-Reid's over 30 years' experience working in the office that employed Hailes, including seven as the supervisor of clinical microbiology and as Hailes's supervisor and the person who prepared her performance evaluations. As in *Wood*, decades of experience in the office where Hailes's worked, either as someone subject to performance

4

review or as someone conducting those reviews, is enough to qualify Ellis-Reid as an expert in the area about which she proposes to testify. *See* 576 F. App'x at 472.

The Secretary, however, objects that Ellis-Reid's methodology is unsound because it was created for this litigation. Doc. 48, at 6–7. In considering this argument, the Court notes that the *Daubert* factors have limited relevance to Ellis-Reid's proposed testimony. It's not clear that applying her experience to her review of Hailes's evaluation can be tested and her technique is not something that would be subject to peer review. *See Daubert*, 509 U.S. at 593–94. Further, issues of error rate or general acceptance don't apply. *See id.* at 594. So the Court ordinarily might not regard a methodology challenge as a serious issue in the case of a non-scientific expert. Methodology goes to the *Daubert* factors, *see Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000), and the Court has broad discretion in determining whether and how to apply those factors for non-scientific experts, *Kumho Tire*, 526 U.S. at 152–53. And even if methodology is a relevant criterion in assessing the admissibility of Ellis-Reid's experience-based testimony, "applying" her "experience to the facts of this case" can be a reliable methodology, for purposes of clearing Rule 702's threshold. *See United States v. Mack*, No. 13-cr-0054, 2014 WL 7404763, at *2 (D. Conn. Nov. 7, 2014); *see also United States v. Conn*, 297 F.3d 548, 556 (7th Cir. 2002) (offering an opinion "on the basis of … past experience and training" is an acceptable methodology); *cf. United States v.*

*Monteiro*, 407 F. Supp. 2d 351, 358 (D. Mass. 2006) (explaining that courts should remember "that, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence'") (quoting *Daubert*, 509 U.S. at 596).

But the Secretary notes that Ellis-Reid proclaims that the reason she chose the "methodologies" that she employed was "*to ensure that the Plaintiff's burden of proof is met.*"[2] Doc. 48-1, at 9 (emphasis added). The Secretary's concern about this statement is well taken. The emphasized language suggests that Ellis-Reid views her role as Hailes's advocate.[3] But an expert's role is to

---

[2]     In full, Ellis-Reid says:

> The reasoning and logic behind the chosen methodologies of review is to ensure that the Plaintiff's burden of proof is met in establishing undeniable facts pertaining to receiving unlawful, improper, or conflicting, the issuing of unsupported/unjustified work errors to lower the Plaintiff's FY annual performance rating as a form of reprisal leading to adverse disciplinary action, slander, libel, and defamation of character.

Doc. 48-1, at 9.

[3]     For instance, Ellis-Reid concludes that Kachulaba's assessment of Hailes's and Lopez-Vega's performance "was made to appear as if Hailes was not competent" and "made to seem as if Ms. Lopez-Vega … was doing exceptional work." Doc. 48-1, at 38. Ellis-Reid does not have the training, experience, or knowledge to ascribe motives to the reasons behind Kachulaba's performance ratings. *See Lucio v. Levy Env't Servs. Co.*, 173 F. Supp. 3d 558, 565 (N.D. Ohio) ("Expert testimony as to the intent of a party is 'not properly the subject of scientific, technical, or other specialized knowledge.'") (citation omitted), *aff'd*, 670 F. App'x 889 (6th Cir. 2016); *see also In re Tylenol*

"help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). It's not to make sure that a party prevails. *See Am. Stove Co. v. Cleveland Foundry Co.*, 158 F. 978, 984 (6th Cir. 1908). Ellis-Reid's proclamation thus raises important concerns about the reliability of her report.[4] *See In re Air Crash Disaster at Detroit Metro. Airport on Aug. 16, 1987*, 737 F. Supp. 427, 430 (E.D. Mich. 1989) ("'where an expert becomes an advocate for a cause, he therefore departs from the ranks of an objective expert witness, and any resulting testimony would be unfairly prejudicial and misleading'") (citation omitted), *aff'd sub nom. Rademacher v. McDonnell Douglas Corp.*, 917 F.2d 24 (6th Cir. 1990); *cf. Johnson*, 484 F.3d at 435 ("if a proposed expert is a 'quintessential expert for hire,' then it seems well within a trial judge's discretion to apply the *Daubert* factors with greater rigor, as the magistrate judge seems to have done in this case").

Following this proclamation, Ellis-Reid proposes to determine, with reference to certain agency documents, whether the Secretary "violated laws and regulations regarding patient safety, the Plaintiff's Title VII right, and

---

*(Acetaminophen) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 181 F. Supp. 3d 278, 295 n.27 (E.D. Pa. 2016) (citing cases).

[4]     This concern is exacerbated by the fact that Ellis-Reid's report does not comply with Federal Rule of Civil Procedure 26(a)(2)(B)(v) and (vi). Ellis-Reid does not list the cases in which she has testified in the last four years as an expert and she does not state her compensation in this case. Although these omissions alone could warrant excluding Ellis-Reid's report, Fed. R. Civ. P. 37(c)(1), *see R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 270–71 (6th Cir. 2010),  Hailes will have the opportunity to rectify these deficiencies.

7

adverse disciplinary action (post-protected activity reprisal) in the form of the lowering of the Plaintiffs FY21 annual performance rating." Doc. 48-1, at 9. There are a few problems with this proposal, starting with the fact that Ellis-Reid doesn't claim to be a legal professional. So she's not in a position to offer an opinion about whether anyone unlawfully retaliated against Hailes. But even if she were, it's the Court's job to determine what the law is and it's the jury's job to determine whether a violation occurred. *See Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 317 (6th Cir. 2019) (an expert may not opine on the "ultimate question of liability"); *Smith v. Wal–Mart Stores, Inc.*, 167 F.3d 286, 295 (6th Cir. 1999) ("interpretation of the city and state building codes" regarding whether one controlled over the other "is a matter of law for resolution by the court and not a proper subject for  [expert] testimony from [an engineer]"); *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) ("The rule prohibiting experts from providing their legal opinions or conclusions is 'so well-established that it is often deemed a basic premise or assumption of evidence law—a kind of axiomatic principle.'") (citation omitted). Ellis-Reid's testimony on these points is therefore not permitted.

Even putting these concerns aside, the fact that a witness might qualify as an expert does not, as a result of that expertise, mean that her opinion is admissible. The expert's opinion must still otherwise be helpful to the trier of fact. And a "conclusion by itself"—without an explanation of how the expert

applied her expertise to reach the conclusion—is not helpful and thus not "admissible." *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671 (6th Cir. 2010); *Thomas*, 398 F.3d at 432. In other words, "[t]he 'ipse dixit of the expert' alone is not sufficient to permit the admission of an opinion." *Tamraz*, 620 F.3d at 671 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *see Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir. 1989) ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.").

As to this latter point, Ellis-Reid's report includes a section titled "opinions and conclusions." Doc. 48-1, at 10. Ellis-Reid critiques the five elements used for Hailes's 2021 performance evaluation and contrasts Hailes's evaluation with one given to one of Hailes's co-workers. *Id.* at 10–39. The Secretary concedes that—even though Hailes offers Ellis-Reid as a non-scientific expert in agency performance evaluations—Ellis-Reid's opinions in "the laboratory specimen testing portions" of Ellis-Reid's report are admissible. Doc. 48, at 8. The Secretary states:

> [t]he only testimony the Court should permit from Ms. Ellis-Reid are the laboratory specimen testing portions of the sections titled "Expert witness opinion/Statement(s) regarding Plaintiffs (sic) issued bench performance errors in bacteriology for element 1: Bench Performance" and "Expert witness opinion/Statement(s) regarding Plaintiffs (sic) issued bench performance errors in bacteriology for Element 2: Records and Reporting." (Ex. 1, pp. 13, 21.) Within these sections Ms. Ellis-Reid includes matters other than the actual laboratory work ups, her opinions on matters that are within common

> understating that should be excluded. The remainder of Ms. Ellis-Reid's report is wholly within common understating and should be excluded.

Doc. 48, at 8. The Court agrees that in the two sections identified above, Ellis-Reid evaluates the laboratory specimen testing, Doc. 48-1, at 13–20, 21–28,[5] and that this testimony is helpful and admissible. *See* Fed.R.Evid. 702(a).

The remaining three sections of Ellis-Reid's report discuss Hailes's performance in customer service, Doc. 48-1, at 28–31, safety, *id*. at 31–33, and education and employee development, *id*. at 33–35. By comparing Hailes's performance to the criteria set out in collective bargaining agreement provisions and Veterans Affairs policies and procedures, Ellis-Reid concludes that she disagrees with the overall ratings that Hailes received in these areas. *Id*. at 30–31, 32–33, 34. But as the Secretary points out, an expert isn't required to say whether Hailes's ratings in these areas were appropriate.[6] A jury can compare Hailes's performance to any relevant criteria and decide for itself what it thinks about Hailes's performance ratings. These three areas of Ellis-Reid's report, Doc. 48-1, at 28–35, are therefore inadmissible. *See*

---

[5] In her report, Ellis-Reid cites exhibits to her report that the Secretary did not file on the docket. The Court has reviewed these exhibits because Hailes provided the Court with a paper copy of the expert reports.

[6] For instance, for Hailes's *customer service* rating, Ellis-Reid comments that Hailes "attended all meetings," "wrote numerous emails" and displayed "well composed" "behavior" "during confrontational departmental meeting." Doc. 48-1, at 30–31. A jury doesn't need an expert to tell it whether Hailes attended all meetings and wrote emails. And it's not clear how Ellis-Reid would know what behavior Hailes displayed at meetings and whether meetings were confrontational. To the extent an inter-agency email describes a meeting a certain way, e.g., confrontational, a jury can judge that for itself.

*Churchwell*, 444 F.3d at 905.

Finally, Ellis-Reid discusses Kachulaba's ratings of Lopez-Vega's performance. Doc. 48-1, at 35–38. The Secretary doesn't discuss this portion of Ellis-Reid's report. Applying the same principles as above, the portion of Ellis-Reid's report containing opinions on laboratory specimen testing Lopez-Vega performed is admissible, *id*. at 37, and the remainder, containing opinions on Lopez-Vega's performance in other areas, *id*. at 35–36, 38, is not.

### 2. Steven N. Emancipator

Hailes also offers a report prepared by Steven N. Emancipator, M.D. Doc. 48-2. Dr. Emancipator is Board-certified in anatomic and clinical pathology and in immunopathology. *Id*. at 2. He currently consults with clinical and research laboratories and with principal investigators. *Id*. Previously, with the College of American Pathologists, Dr. Emancipator served on the Council on Accreditation, as a state commissioner, a master laboratory inspector, and as director of a clinical laboratory certified by the College. *Id*. at 2–3. For 35 years, he served as a professor of pathology as Case Western Reserve University and for the last nine years he has been an emeritus professor. *Id*. at 3. From 2006 through 2017, he was chief of Pathology & Laboratory Medicine Service, at the Veterans Affairs hospital in Cleveland. *Id*.

It's Hailes's burden to show that Dr. Emancipator is qualified to testify as an expert. *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 478 (6th Cir. 2008). Hailes says that Dr. Emancipator is a "board-certified pathologist with

extensive experience in clinical laboratory operations and many years of service as a Clinical Laboratory Director specializing in clinical pathology and laboratory medicine." Doc. 49, at 3. "He is certified by the College of American Pathologists [CAP] as a Clinical Laboratory Inspection Team Lead and conducts nationwide and international clinical laboratory inspections." *Id*. Hailes explains that Dr. Emancipator "can clarify the legal duties of a Laboratory Director and a Supervisor regarding [standards of practice] and the delegation of authority." *Id*. at 5. For his part, Dr. Emancipator explains that he was the director of a CAP-accredited lab for 11 years and has "conducted more than 200 routine inspections." Doc. 48-2, at 3. So Hailes has shown that Dr. Emancipator is qualified as an expert to show how labs work.

Dr. Emancipator proposes to review acts of Congress, provisions of the Code of Federal Regulations, certain accreditation standards, and the Department of Veterans Affairs Labor Management Relations master agreement. Doc. 48-2, at 5–6. And he proposes to rely on his review of these items:

> *to ensure that the Plaintiff's burden of proof is met* in establishing undeniable facts of receiving unlawful, improper, or conflicting orders from P&LMS management officials that are not permitted to be used as a form of adverse disciplinary action in the form of the issuing of work errors to lower/reduce the Plaintiff's annual performance rating in bench performance and records & reporting.

Doc. 48-2, at 6 (emphasis added). Having reviewed those items, Dr. Emancipator proposes to review certain evidence provided by Hailes:

12

> *to ensure that the Plaintiff's burden of proof is met* in establishing undeniable facts proving that Agency's affirmed admissions to a Supervisor having the authority to deviate from written SOPs solely based on the Supervisors occupational title of "Supervisor" is substantiated in an Administrative Judges decision and analysis for entering Summary Judgement, substantiated in deposition transcripts of P&LMS management officials, and in the deposition transcripts of P&LMS Microbiology Medical Technologists.

*Id*. at 6 (emphasis added).[7]

For many of the same reasons that applied to Ellis-Reid's report, Dr. Emancipator's report is problematic. For starters, Dr. Emancipator's stated objective is to make sure that Hailes meets her burden of proof, "establish[] undeniable facts" that Hailes "receiv[ed] unlawful, improper, or conflicting orders,' and "prov[e]" certain other matters. Doc. 48-2, at 6. In other words, Dr. Emancipator proposes to offer an "advocacy-based interpretation" rather than one based on his expertise. *Yancey v. Carson*, No. 04-cv-556, 2007 WL 3088232, at *4 (E.D. Tenn. Oct. 19, 2007) (quoting *Fisher v. Ciba Specialty Chemicals*

---

[7]    If these block quotes look familiar, it's because Ellis-Reid used very similar language in her report. *See supra*, note 2. The reference in Dr. Emancipator's report to an *administrative judge*, the fact that Dr. Emancipator signed the report in April 2025, and the fact that Emancipator's report does not comply with Federal Rule of Civil Procedure 26(a)(2)(B), suggests the possibility that Dr. Emancipator prepared his report for Hailes's apparently still-pending administrative case before the Equal Employment Opportunity Commission and that she recycled it for this case. The fact that in Commission proceedings the rules of evidence are not "strictly" enforced, *see* 29 C.F.R. § 1614.109(e), might explain any differences between the Commission's treatment of Hailes's experts' reports and this Court's treatment of them. The Secretary hasn't addressed the propriety of whether and to what extent the EEOC's "decision and analysis" may be utilized in this lawsuit.

13

*Corp.*, 238 F.R.D. 273 (S.D. Ala. 2006)). But that is not Emancipator's role in this litigation. *See Am. Stove*, 158 F. at 984. Dr. Emancipator's advocacy is alone a basis to find his report unreliable. *See In re Air Crash Disaster*, 737 F. Supp. at 430.

It is also not, as Dr. Emancipator proposes, an expert's role to establish facts.[8] *See* Doc. 48-1, at 6 (stating that he sought "to ensure that the Plaintiff's burden of proof is met in establishing undeniable facts proving that Agency's affirmed admissions"). As to this point, Dr. Emancipator says that "[e]xpert review of Microsoft Outlook email correspondences of the Plaintiff and P&LMS management officials is necessary to show that notifications of unlawful, improper, and/or conflicting orders from the Plaintiff went unanswered and unresolved, which is an imminent threat to patient care and safety." Doc. 48-2, at 6. But the jury doesn't need an expert to say whether emails went unanswered and unresolved, so testimony on this issue wouldn't be helpful.

Dr. Emancipator also says that his consideration and opinion about evidence supplied to him is "necessary to determine if the Agency violated laws and regulations regarding patient safety, and regarding the Plaintiff's right to refuse such orders that would require the Plaintiff to violate applicable laws, that led to a lower performance rating of bench work and records & reporting for the Plaintiff's 2020 fiscal year annual performance rating." Doc. 48-2, at 6–

---

[8]     An expert witness could also be a percipient witness. As far as the Court can tell, Hailes has not tried to rely on Dr. Emancipator as fact witness who observed the events at issue in Hailes's complaint.

14

7. On this point, Hailes adds that Dr. Emancipator "can clarify the legal duties of a Laboratory Director and a Supervisor regarding SOPs and the delegation of authority" and help show that she was given unlawful orders. Doc. 49, at 5.

But Dr. Emancipator doesn't discuss the evidence in this case that he used to base his opinion. He doesn't mention Kachulaba or the lab director by name and he doesn't describe anything specific that they or Hailes did; he only speaks in vague generalities about what "the Director" "should" do in certain circumstances. *See, e.g.*, Doc. 48-2, at 7. He concludes:

> To the best of my recollection and understanding from my experience as CLIA Director at a VA Medical Center, adverse personnel actions or disciplinary actions are not appropriate supervisory responses to poor competency in executing one or more laboratory tests. Likewise, refusal to follow unlawful, conflicting or improper orders is not cause for any adverse personnel action.

*Id.* at 8. This passage makes clear that Dr. Emancipator isn't relying on the facts in this case to form his opinion. And he's basing his conclusion on "the best of [his] recollection and understanding" as the VA Medical Center Director, a position which, according to his resume, he last held in 2017. Dr. Emancipator's opinion about unidentified "adverse personnel actions" based on his eight-year old "recollection" of his "understanding" of the VA lab's personnel matters is unreliable on this point. *See Lyngaas v. Curaden Ag*, 992 F.3d 412, 431 (6th Cir. 2021) (expert's opinion was unreliable because it was based on the expert's 'subjective belief or unsupported speculation.'") (quoting *Daubert*, 509 U.S. at 590).

15

Nevertheless, the portion of Dr. Emancipator's report that details the duties of a lab director, Doc. 48-2, at 4–5, is helpful and relevant. Kachaluba was Hailes's supervisor.[9] Doc. 7, at 3. Hailes alleges that she was discriminated and retaliated against for reporting on and not following Kachaluba's orders, which, Hailes alleges, were outside the lab's standard operating procedures and unlawful. *Id.* at 3, ¶9; at 6, ¶26; at 7–8. Hailes explains that Dr. Emancipator's report would "help the trier of fact understand" that the errors that Kachaluba attributed to Hailes were "illegitimate" by "clarify[ing] the legal duties of a Laboratory Director and a Supervisor regarding [standard operating procedures] and the delegation of authority." Doc. 49, at 5. Indeed, in his report, Dr. Emancipator details the duties of a "Director of a Clinical Laboratory" under federal law and regulations and the College of American Pathologists' standards, including delegation authority. Doc. 48-2, at 4–5. This testimony is relevant because Hailes alleges that Kachaluba gave her improper orders, an allegation which is at the heart of Hailes's claim. And the testimony is helpful because it will assist the jury in understanding the regulatory framework governing lab directors. *See, e.g., In re Mirena IUD Products Liability Litigation*, 169 F. Supp. 3d 396, 478–79 (S.D. N.Y. 2016) ("Dr. Parisian's experience as an officer at the FDA qualifies her to opine on the background of the FDA, its functions, and the FDA's regulatory framework….

---

[9]     It's not clear who the lab director is here.

[T]his type of expert testimony on the complex FDA framework is helpful to a jury.").

The Secretary argues that "'experts' may not opine on the law because 'the trial judge does not need the judgment of witnesses.'" Doc. 48, at 9 (citation omitted); Doc. 50, at 3–4. But "there is a 'subtle,' but 'nonetheless important' distinction between 'opin[ing] on the ultimate question of liability' (impermissible), and 'stating opinions that suggest the answer to the ultimate issue or that give the jury all the information from which it can draw inferences as to the ultimate issue' (permissible)." *Babb*, 942 F.3d at 317 (permitting expert testimony on the nursing standard of care in an employment discrimination case that "call[ed] into question the *factual* assertion at the heart of [defendant's] defense" that the plaintiff committed nursing errors that caused her termination); *see Antrim Pharms. LLC v. Bio-Pharm, Inc.*, 950 F.3d 423, 430–31 (7th Cir. 2020) ("[C]ourts have permitted regulatory experts to testify on complex statutory or regulatory frameworks when that testimony assists the jury in understanding a party's actions within that broader framework."); *United States v. Bertram*, 900 F.3d 743, 751 (6th Cir. 2018) (director of state Medicaid office properly testified as an expert "because she was familiar with the Medicaid regulations and she testified accurately about the meaning of the regulation defining medical necessity," which "cut to the heart of the case" about whether ordered lab tests were medically necessary); *In re Mirena IUD Products Liability Litigation*, 169 F. Supp. 3d at 478–79.

Here, Dr. Emancipator's testimony about the regulations governing lab directors and their delegation authority is permissible, relevant, and helpful.

As with Ellis-Reid's report, however, Dr. Emancipator's report does not state all the cases in which he's testified as an expert in the last four years and it doesn't state his compensation "for [his] study and testimony in [this] case." *See* Fed. R. Civ. P. 26(a)(2)(B)(v)–(vi). If Hailes intends to rely on Dr. Emancipator's report, Dr. Emancipator must supplement it.

*Conclusion*

The Secretary's motion, Doc. 48, to exclude Hailes's expert reports is granted in part and denied in part. If Hailes wishes to rely on Ellis-Reid's and Dr. Emancipator's opinions about laboratory testing and laboratory director duties, respectively, she must provide to the Secretary supplemental reports from Ellis-Reid and Dr. Emancipator with the information required by Federal Rule of Civil Procedure 26(a)(2)(B)(v) and (vi). Hailes must provide the supplements by May 21, 2026.

The parties' summary judgment motions are due on June 1, 2026.

It is so ordered.

Dated: April 30, 2026

/s/ James E. Grimes Jr.
James E. Grimes Jr.
U.S. Magistrate Judge

18